UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RYAN HYAMS,

         Plaintiff,

    v.

CVS HEALTH CORPORATION, et al.,

         Defendants.

Case No. 18-cv-06271-PJH

**ORDER**

Re: Dkt. Nos. 27, 32

Defendants CVS Health Corporation, CVS Pharmacy, Inc., Garfield Beach CVS, LLC, and CVS RX Services, Inc.'s (together, "CVS") motion to dismiss came on for hearing before this court on September 4, 2019. Plaintiff Ryan Hyams appeared through his counsel, Cathy Coble. Defendants appeared through their counsel, Daniel Fears. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

This action stems from Hyams' former employment as a pharmacist for CVS. First Amended Compl. ("FAC"), Dkt. 22 ¶¶ 5, 13–16. The operative complaint alleges eight causes of action, each against all defendants: (1) Disparate Treatment Discrimination on the Basis of Race and/or Color in Violation of the California Fair Employment and Housing Act ("FEHA"); (2) Disparate Impact Discrimination on the Basis of Race and/or Color in Violation of FEHA; (3) Harassment on the Basis of Race and/or Color in Violation of FEHA; (4) Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Race and/or Color in Violation of FEHA; (5) Failure to Prevent, Investigate, and

1  Remedy Discrimination, Harassment, or Retaliation in Violation of FEHA; (6) Intentional

2  Infliction of Emotional Distress; (7) Negligent Infliction of Emotional Distress; and

3  (8) Wrongful Termination in Violation of Public Policy.

4       Plaintiff was hired by CVS on December 15, 2015, after CVS acquired a pharmacy

5  located in a San Francisco Target store where plaintiff had worked since June 2011.[1]  Id.

6  ¶ 18.  Plaintiff "was the only Black full-time pharmacist out of 64 pharmacists in his

7  District and over 200 pharmacists in his Region."  Id. ¶ 25.  On or about May 19, 2017,

8  plaintiff was selected by CVS for an audit of a Drug Utilization Review ("DUR") system,

9  although by the nature of the audit plaintiff was not informed that it was occurring.  Id.

10  ¶ 26.  The audit essentially consisted of CVS creating a digital record of a fictitious

11  patient with various ailments and drug prescriptions, designed to test pharmacists'

12  detection of possible drug interactions.  Id. ¶¶ 27–29.  When undergoing the audit,

13  plaintiff bypassed a warning screen (which he was not trained on), made notations in the

14  patient file, and then approved the prescription.  Id. ¶ 29.  Plaintiff marked the physical

15  bag containing the prescription for an in-person oral consultation regarding drug

16  interactions.  Id. ¶ 31.

17       On or about July 18, 2017, CVS contacted plaintiff regarding the DUR audit.  Id.

18  ¶ 37.  Interactions between plaintiff and CVS's human resources department ensued.  Id.

19  ¶¶ 37–45.  On or about August 25, 2017, plaintiff was terminated in an in-person meeting,

20  was told that he was the only Black pharmacist employed by CVS in his Region, and was

21  told that he was the only individual selected for the DUR audit.  Id. ¶ 45.

22       On July 3, 2018, plaintiff filed an administrative complaint with the Department of

23  Fair Employment and Housing ("DFEH"), and he received a DFEH right-to-sue letter on

24  the same day.  Id. ¶ 60; see Defendants' RJN, Dkt. 28, Ex. A at ECF pp. 5–7 (the "DFEH

25  Charge").

26       On August 21, 2018, plaintiff filed a civil complaint against CVS in the Superior

27  

28  [1] For purposes of this motion, the facts are recounted as alleged in the operative
complaint and are assumed to be true.

1   Court of the State of California, County of San Francisco.  Dkt. 3, Ex. A.  The action was

2   removed to this court on October 12, 2018.  Dkt. 1.  The original complaint stated seven

3   of the same causes of action as the FAC, but it did not state the FAC's second cause of

4   action for disparate impact discrimination.  On June 26, 2019, the parties submitted a

5   joint stipulation to permit plaintiff to file a FAC.  On June 27, 2019, the court entered the

6   stipulated order, and plaintiff filed the FAC.  Dkts. 21–22.  On July 11, 2019, CVS filed an

7   answer to the FAC.  Dkt. 23.  On July 30, 2019, defendants filed the present motion to

8   dismiss the FAC's second claim for disparate impact discrimination.  Dkt. 27.

**DISCUSSION**

9

10  **A.    Legal Standard**

11      "After the pleadings are closed—but early enough not to delay trial—a party may

12  move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings

13  is properly granted when, accepting all factual allegations in the complaint as true, there

14  is no issue of material fact in dispute, and the moving party is entitled to judgment as a

15  matter of law.  Analysis under Rule 12(c) is substantially identical to analysis under

16  Rule 12(b)(6) because, under both rules, a court must determine whether the facts

17  alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  Chavez v.

18  United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and

19  citations omitted); accord Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th

20  Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and

21  Rule 12(c) is the time of filing.").

22  **B.    Analysis**

23      Defendants move to dismiss under two alternate grounds.  First, they move under

24  Rule 12(b).  A motion to dismiss pursuant to Rule 12(b) "must be made before pleading if

25  a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Because defendants filed an

26  answer before asserting their Rule 12(b) defense, the Rule 12(b) motion is untimely and

27  is therefore DENIED.  See Dkt. 23 (answer).

28      In the alternative, defendants move to dismiss under Rule 12(c).  The parties

agree that Rule 12(c) is an appropriate vehicle for defendants' motion, and the court presently considers defendants' Rule 12(c) motion.

Before suing for a FEHA violation, an employee must exhaust his administrative remedies by filing a timely and sufficient complaint (called a "charge") with the DFEH and receiving a right-to-sue notice. Cal. Gov't Code §§ 12960, 12965(b); Rodriguez v. Airborne Express, 265 F.3d 890, 896–97 (9th Cir. 2001). "The scope of the written administrative charge defines the permissible scope of the subsequent civil action. Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." Id. at 897 (citation omitted).

"Disparate treatment is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic. Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision. By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Under a disparate-impact theory of discrimination, a facially neutral employment practice may be deemed illegally discriminatory without evidence of the employer's subjective intent to discriminate that is required in a disparate-treatment case." Raytheon Co. v. Hernandez, 540 U.S. 44, 52–53 (2003) (internal quotation marks, citations, and alterations omitted). "Because these claims arise from different theories, a party cannot rely on allegations supporting one to administratively exhaust the other." Lindsey v. United Airlines, Inc., Case No. 17-cv-00753-WHA, 2017 WL 2404911, at *2–3 (N.D. Cal. June 2, 2017) (citing Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729–30 (9th Cir. 1984)); accord De Los Santos v. Panda Exp., Inc., Case No. 10-cv-01370-SBA, 2010 WL 4971761, at *4 (N.D. Cal. Dec. 3, 2010) (collecting cases).

The parties do not dispute that plaintiff has exhausted his disparate treatment claim. The parties also do not dispute that plaintiff must separately exhaust his

administrative remedies with respect to his disparate impact claim in order to pursue that theory of discrimination in this civil action. Plaintiff argues that he has exhausted his administrate remedies with respect to this disparate impact theory for two reasons. First, plaintiff argues that his DFEH Charge actually asserted a discrimination claim based on disparate impact. Second, plaintiff argues that even if his DFEH Charge did not assert a disparate impact claim, a disparate impact claim is "like or reasonably related to" the assertions in his DFEH Charge.

### 1. Whether Plaintiff's DFEH Charge Asserted A Discrimination Claim Based On Disparate Impact

First, plaintiff argues that any claim for any type of discrimination "is exhausted simply by checking the box marked 'discrimination'" on a DFEH intake form. Opp., Dkt. 42 at 13. Plaintiff's argument fails. As an initial matter, plaintiff offers no evidence that he checked a box on a DFEH submission alleging "discrimination." Instead, plaintiff submits for the court's consideration an entirely-blank version of the form he claims to have submitted. See Dkt. 42-1, Ex. A. Although plaintiff's counsel argues that the submitted form had a box labeled "discrimination" checked, plaintiff's motion is not accompanied by any sworn declaration attesting to the declarant's personal knowledge of the facts he asks the court to consider, or any other type of cognizable evidentiary submission.[2] Moreover, the form plaintiff provides explicitly states that submitting it to the DFEH "is not a filed complaint." Dkt. 42-1, Ex. A at ECF p. 5.

Even if plaintiff had offered some evidence tending to show that he submitted an intake form with a box labeled "discrimination" checked, doing so would not alone have stated a disparate impact theory in his DFEH Charge sufficient to administratively exhaust it. Such a box could have indicated either disparate treatment or disparate impact, which the parties agree must be exhausted separately. Checking the single box is not alone sufficient to exhaust both theories. Here, that is particularly the appropriate

---

[2] Plaintiff also cites an Exhibit C to his request for judicial notice, but that filing did not contain an Exhibit C. See Opp. at 14–15 n.3; Dkt. 42-1.

conclusion because the submitted intake form was supplemented by an attorney-prepared DFEH Charge replete with allegations that plaintiff was "treated differently" because of his race (DFEH Charge at 2), and a civil complaint filed soon thereafter explicitly alleging "disparate treatment" yet making no reference to disparate impact (e.g., Complaint, Dkt. 3, Ex. A ¶¶ 69, 83, 96). Plainly, the attorney preparing the charge was specifically and solely alleging a disparate treatment theory. For the foregoing reasons, the court finds that plaintiff's DFEH Charge did not actually assert disparate impact discrimination.

### 2. Whether Plaintiff's Disparate Impact Theory Is Within the Scope of the Administrative Investigation Which Can Reasonably Be Expected To Grow Out of the DFEH Charge

Second, even though plaintiff's DFEH Charge did not assert disparate impact discrimination, plaintiff could have exhausted that theory if it is "like or reasonably related to" the assertions in his DFEH Charge. "An employment discrimination plaintiff must exhaust administrative remedies, and this Court only has jurisdiction over conduct alleged in the administrative charge and conduct that is 'like or reasonably related to' the administrative allegations. This standard is met where the allegations in the civil suit are within the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination. In evaluating whether the standard has been satisfied, administrative charges must be liberally construed." Pacle v. JPMorgan Chase Bank, N.A., Case No. 13-cv-3379-TEH, 2013 WL 5289020, at *2 (N.D. Cal. Sept. 19, 2013) (internal quotation marks and citations omitted) (citing Rodriguez, 265 F.3d at 896–97 ("These procedural requirements, as with all provisions of FEHA, are to 'be construed liberally for the accomplishment of the purposes of FEHA.' Cal. Gov't Code § 12993(a). . . . This standard is met where the allegations in the civil suit are within the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination.") (internal quotation marks omitted)); Sandhu v. Lockheed Missiles & Space Co., 26 Cal. App. 4th 846 (1994).

The parties dispute whether investigation into plaintiff's disparate impact claim—that a neutral policy of administrating audits had a disproportionate impact on African American employees—would be "reasonably expected to grow" out of plaintiff's administrative complaint.

The "touchstone" or "characteristic feature of a disparate-impact claim" is "the recitation of a facially-neutral employment policy." Lindsey, 2017 WL 2404911, at *2–3. However, a description of a policy that, "in the context presented . . . was intended to convey that Defendants were relying on that . . . [policy] as a pretext," does not exhaust a disparate-impact claim. De Los Santos, 2010 WL 4971761, at *5.

The facts alleged in the DFEH Charge unambiguously allege only a theory of direct discrimination. For example, the charge states:

- Mr. Hyams, an African-American male, was an exemplary 2-year employee of CVS Pharmacy, Inc.

- Mr. Hyams' performance evaluations reflected that he performed above expectations for CVS.

- On or about May 19, 2017, Mr. Hyams, the only African-American pharmacist employed by CVS out of 64 pharmacists in his District, was unknowingly selected for an audit by CVS.

- Mr. Hyams, who had no idea that he was being audited or that CVS could or would create a fake patient profile to entrap an African-American employee, checked the prescriptions and recognized the possible interaction.

- Mr. Hyams and other pharmacists in the company had processed this same combination of prescriptions for many other patients during his employment, without issue.

- More than three months later, on or about August 25, 2017, Mr. Hyams was wrongfully terminated, purportedly because he filled the prescription that was the subject of the May 19, 2017 audit.

- During his termination meeting, Mr. Hyams was notified that he, the only African American pharmacist employed by CVS in his District, was the only individual selected to be audited in this manner.

- This entrapment and eventual termination was the culmination of a pattern of practice of discrimination against Mr. Hyams based on his race.

- Throughout his employment, Mr. Hyams was treated differently than other non-African-American pharmacists.

- On one such occasion, a former supervisor cautioned Mr. Hyams against crossing his arms because, based on his appearance, he looked too aggressive.

DFEH Charge at 2–3.

Plaintiff's charge alleged that he was the only African-American pharmacist employed in his district, that the "fake patient profile" of the audit was pretextual and functioned to "entrap" him, and that he was "was the only individual selected to be audited in this manner." Id. Furthermore, the "entrapment and eventual termination was the culmination of a pattern of practice of discrimination against Mr. Hyams based on his race." Id. Such allegations unambiguously advance a theory that plaintiff was intentionally discriminated against and targeted because of his race.

Although the audit could be considered a company policy, plaintiff alleges that it was pretextual and served to entrap him. See id.; see generally Dkt. 3-1 ¶¶ 59 (alleging "false (pretextual) grounds for adverse job actions"), 131, 148. Additionally, plaintiff specifically alleged that no one else was subject to the audit. Even if the policy provided that only African Americans were subject to audit, that would not be a facially-neutral policy with a disparate impact—it would be a directly-discriminatory policy. Consequently, it would not be reasonably expected for a disparate-impact investigation (with the objective of probing a facially-neutral policy) to grow out of an administrative charge alleging only a directly-discriminatory policy. Therefore, the disparate impact theory must be dismissed for failure to exhaust administrative remedies.

At the hearing, plaintiff argued for the first time that five pharmacists have been terminated nation-wide based on similar audits, and three were African American. Plaintiff argued at the hearing—again, for the first time—that this new evidence demonstrates that a disproportionate percentage of African Americans were terminated

as a result of an audit policy. Plaintiff argues that because he investigated and was able to determine this new information,[3] that suggests that these alleged facts would have been revealed by the administrative agency's investigation into his charge. Notwithstanding that plaintiff did not make this argument prior to the hearing or support these new allegations with any citations to the DFEH Charge, any complaint in this action, or any evidentiary submission, these allegations only further demonstrate that the administrative complaint would not be reasonably expected to lead to an investigation of the audit as a facially-neutral policy. Plaintiff's new argument appears to be that the audit was administered to employees of multiple races, but resulted in the termination of a disproportionate number of African Americans. That flatly contracts the allegations in his DFEH Charge, which specifically alleges that plaintiff was the only individual subjected to the audit, and that he was specifically targeted for (and entrapped by) the audit because of his race. Although the new allegations might plausibly support a claim of a facially-neutral policy, they highlight the actual DFEH Charge's deficiency in this regard.

Plaintiff's counsel also conceded at the hearing that plaintiff was unaware of the newly-raised facts at the time the DFEH Charge was filed. That is telling. Although plaintiff may now be in the position to allege facts that could support allegations of disparate impact discrimination (the court does not take a position on that question), he plainly was not when he filed his DFEH Charge. The exhaustion inquiry assesses what plaintiff alleged in his charge, not what new facts he believes he could allege today. As such, the court finds that disparate impact discrimination is not within the scope of the administrative investigation which can reasonably be expected to have grown out of plaintiff's DFEH charge.[4]

---

[3] The source of plaintiff's new allegations is unclear, but at the hearing it was suggested that they are based on information learned during mediation.

[4] Plaintiff also argues that defendants should be estopped from moving to dismiss plaintiff's disparate impact theory because they did not oppose plaintiff's request for leave to file an amended complaint stating the theory. Plaintiff's argument is unavailing. Defendants' stipulation does not constitute a clearly-inconsistent position from their present motion, nor have they derived an unfair advantage from it. See generally Kobold

### 3.    Whether Leave to Amend Is Appropriate

Plaintiff argues that he should be given leave to amend his complaint in this action to allow him to exhaust his disparate impact claim.  Plaintiff argues that amendment would not be futile because his new administrative charge would not be time-barred because it would "relate back" to the original charge.  Defendants argue amendment would be futile because the amendment would not relate back, so the civil claim would be time-barred.

"[T]he relation-back doctrine is available in appropriate circumstances to render timely an otherwise untimely amendment to a charge under FEHA."  Rodriguez, 265 F.3d at 898.  An amendment adding a discrimination theory relates back to a timely-filed DFEH charge asserting a different theory of discrimination when "all of the allegations were 'based on the same operative facts.'"  Id. (quoting FEHC v. County of Alameda, Sheriff's Dep't, FEHC Dec. No. 81–13, 1981 WL 30856, at *8 (Cal. F.E.H.C. July 2, 1981)).  "[T]he factual allegations [of the original DFEH Charge] must be able to bear the weight of the new theory added by amendment."  Id. at 899.  The court "conduct[s] its own de novo analysis of whether the amendment related back," and is therefore not bound by an "agency's acceptance of an amended charge" for purposes of "the exhaustion analysis."  Id. at 898–99.

Although, plaintiff has not filed an amended administrative charge, plaintiff's counsel has clearly explained what plaintiff would seek to exhaust with an amended charge.  Plaintiff argues that he "would not seek to amend his DFEH Charge to add a discrimination claim based on a new protected category or even new set of facts; rather, his amendment merely would clarify his alternative theory of disparate impact discrimination based on the same protected categories as his original charge (race and/or color) and the same operative facts (the May 2017 test)."  Opp. at 24.

Plaintiff's attempt to relate his amended charge back to his original charge would

---

v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1044–45 (9th Cir. 2016).

be futile.  For the same reasons that the DFEH Charge would not reasonably lead to an investigation into disparate impact discrimination discussed above, the factual allegations in the charge are not "able to bear the weight of the new theory added by amendment." Rodriguez, 265 F.3d at 899.  In order to support a disparate impact allegation, plaintiff would have to allege additional facts—as plaintiff attempted to do at the September 4, 2019 hearing.  Because any amended charge would have to allege new facts to allege a disparate impact theory, it would run afoul of Rodriguez and consequently would not relate back to the original charge's filing date.

As such, plaintiff's request for leave to amend the civil complaint in this action in order to administratively exhaust his disparate impact claim is futile.  Therefore, plaintiff's disparate impact theory of discrimination is DISMISSED WITH PREJUDICE.

Because plaintiff's disparate impact theory is dismissed with prejudice, defendants' administrative motion to extend deadlines to accommodate more discovery based on that theory (Dkt. 32) is DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b) is DENIED; defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(c) is GRANTED as explained in this order; plaintiff's disparate impact theory of discrimination is DISMISSED WITH PREJUDICE; and defendants' administrative motion to modify the pretrial order is DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated:  September 13, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge