UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RYAN HYAMS,<br><br>    Plaintiff,<br><br>v.<br><br>CVS HEALTH CORPORATION, et al.,<br><br>    Defendants. | Case No. 18-cv-06271-PJH (LB)<br><br>**DISCOVERY ORDER REGARDING (1) PATIENT-SAFETY WORK PRODUCT PRIVILEGE AND (2) BURDEN AND PROPORTIONALITY**<br><br>Re: ECF No. 99, 115, 126, 129, 130, 132 |

## INTRODUCTION

The court assumes the reader's familiarity with the subject matter and procedural history of this case. The parties have raised more discovery disputes, regarding (1) patient-safety work product ("PSWP") under the Patient Safety and Quality Improvement Act, 42 U.S.C. § 299b-21 et seq. ("PSQIA"),[1] and (2) burden and proportionality with respect to the plaintiff's Interrogatories Nos. 1–4 and 19.[2] The court issues this order defining the scope of PSWP protection and directs the defendants to (1) immediately produce all surveillance video and still photographs that they are withholding on the basis of PSWP and (2) reexamine all other withheld documents in light of the

---

[1] Pl. PSWP Mem. – ECF No. 100; Defs. PSWP Opp'n – ECF No. 115; Pl. PSWP Reply – ECF No. 126. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Defs. Suppl. Burden Mem. – ECF No. 129; Pl. Suppl. Burden Opp'n – ECF No. 130; Defs. Suppl. Burden Reply – ECF No. 132.

ORDER – No. 18-cv-06271-PJH (LB)

court's guidance and produce any non-PSWP documents by December 19, 2019. The court overrules the defendants' burden and proportionality arguments and orders them to respond to the plaintiff's interrogatories.

## ANALYSIS

### 1. Patient-Safety Work Product

The PSQIA defines PSWP with reference to two concepts: "patient safety organization" (often referred to as "PSO") and "patient safety evaluation system" (often referred to as "PSES"). "The term 'patient safety organization' means a private or public entity or component thereof that is listed by the Secretary [of Health and Human Services] pursuant to [PSQIA requirements]," 42 U.S.C. § 299b-21(4), and "[t]he term 'patient safety evaluation system' means the collection, management, or analysis of information for reporting to or by a patient safety organization," 42 U.S.C. § 299b-21(6).

The PSQIA defines three categories of PSWP:

1. materials[3] "assembled or developed by a provider for reporting to a patient safety organization and [] reported to a patient safety organization; . . . and which could result in improved patient safety, health care quality, or health care outcomes," 42 U.S.C. § 299b-21(7)(A)(i)(I) (the "Reporting Prong")

2. materials "developed by a patient safety organization for the conduct of patient safety activities; and which could result in improved patient safety, health care quality, or health care outcomes," 42 U.S.C. § 299b-21(7)(A)(i)(II) (the "PSO-Developed Prong"), and

3. materials that "identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system," 42 U.S.C. § 299b-21(7)(A)(ii) (the "Deliberations Prong").

---

[3] Specifically, "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements." 42 U.S.C. § 299b-21(7)(A).

Notwithstanding the above, the PSQIA excludes from the definition of PSWP "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system," among other things. 42 U.S.C. § 299b-21(B)(ii).

The defendants invoke the "constitute the deliberations and analysis" portion of the Deliberations Prong to withhold 71 documents, arguing that the documents contain "[t]he data collected, and the analysis performed concerning the representative patient audit[, which] constitute deliberations and analysis within CVS's PSES."[4]

**1.1 "Deliberations or Analysis . . ."**

The plain language of the Deliberations Prong extends the definition of PSWP only to "deliberations or analysis." 42 U.S.C. § 299b-21(7)(A)(ii). It does not extend the definition of PSWP to the underlying facts or documents that might have been the subject of deliberation and analysis.

This is confirmed by guidance from the Department of Health and Human Services ("HHS"), the agency charged with administering the PSQIA:

> We note that the statutory protections for deliberations and analysis in a patient safety evaluation system apply without regard to the status of the underlying information being considered (i.e., it does not matter whether the underlying information being considered is patient safety work product or not). A provider can fully protect internal deliberations in its patient safety evaluation system over whether to report information to a PSO. The deliberations and analysis are protected, whether the provider chooses to report the underlying information to a PSO or not. *However, the underlying information, separate and apart from the analysis or deliberation, becomes protected only when reported to a PSO.* See section 921(7)(A)(i)(1) of the Public Health Service Act, 42 U.S.C. 299b-21(7)(A)(i)(1).
>
> To illustrate, consider a hospital that is reviewing a list of all near-misses reported within the past 30 days. The purpose of the hospital's review is to analyze whether to report any or part of the list to a PSO. The analyses (or any deliberations the provider undertakes) are fully protected whether the provider reports any near-misses or not. The status of the near-misses list does not change because the

---

[4] Defs. Privilege Log Addendum – ECF No. 101 at 188–89. The defendants do not invoke the Reporting Prong, the PSO-Developed Prong, or the identify-deliberations-or-reporting component of the Deliberations Prong. *See id.*; Defs. PSWP Opp'n – ECF No. 115 at 12. The court expresses no opinion here regarding the scope of the Reporting Prong or the PSO-Developed Prong.

ORDER – No. 18-cv-06271-PJH (LB)　　　3

deliberations took place. The fact that the provider deliberated over reporting the list does not constitute reporting and *does not change the protected status of the list. Separate and apart from the analysis, this list of near misses is not protected unless it is reported.* By contrast, this provision fully protects the provider's deliberations and analyses in its patient safety evaluation system regarding the list.

Patient Safety and Quality Improvement, 73 Fed. Reg. 8112, 8122–23 (Feb. 12, 2008) (proposing rules) (emphasis added); *accord* Patient Safety and Quality Improvement, 73 Fed. Reg. 70,732, 70,743 (Nov. 21, 2018) (adopting final rules) (explaining that "information that *constitutes* the deliberation or analysis within a patient safety evaluation system is protected," as contrasted from "[i]nformation *underlying* the analysis") (emphasis added).[5]

HHS's construction of the Deliberations Prong is consistent with deliberative privileges in other contexts. For example, the government enjoys a deliberative-process privilege over "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Karnoski v. Trump*, 926. F.3d 1180, 1203 (9th Cir. 2019) (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008)). The privilege applies only to materials that are "predecisional" and "deliberative." *Id.* at 1204 (quoting *Loving*, 550 F.3d at 38). Courts have held that "'[p]urely factual material that does not reflect the deliberative process'" is not "deliberative" for the purposes of privilege. *See, e.g.*, *Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 379 (N.D. Cal. 2017) (quoting *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). The court does not mean to

---

[5] HHS explained that the information underlying the analysis that was either reported to a patient-safety organization or collected in a patient-safety-evaluation system for the purpose of reporting to a patient-safety organization might independently be PSWP under the Reporting Prong. *See* 42 C.F.R. § 3.20 (PSWP includes information "assembled or developed by a provider for reporting to a PSO and are reported to a PSO, which includes information that is documented as within a patient safety evaluation system for reporting to a PSO, and such documentation includes the date the information entered the patient safety evaluation system"); 73 Fed. Reg. at 70,743 ("information underlying an analysis may be protected" if it is "either reported to a PSO and protected or collected in a patient safety evaluation system" for reporting to a PSO). But information underlying an analysis is not PSWP under the Deliberations Prong — the only prong the defendants invoke here. 73 Fed. Reg. at 8122–23; *accord* 73 Fed. Reg. at 70,743.

suggest that the scope of the governmental deliberative-process privilege necessarily controls the scope of the Deliberations Prong of the PSQIA. But it provides a point of comparison and supports that the plain language "deliberations or analysis" used in the Deliberations Prong does not necessarily extend to factual material underlying deliberations or analyses and that HHS's construction of the Deliberations Prong as not extending to such underlying factual material is reasonable.

The defendants cite an Illinois state court case, *Daley v. Tereul*, 107 N.E.2d 1028 (Ill. Ct. App. 2018), to suggest that the Deliberations Prong extends to facts underlying their analyses.[6] *Daley* does not support this argument. First, the documents at issue in *Daley* "were assembled and prepared by [the defendant] 'solely' for submission to [its patient-safety organization] and they were reported to [its patient-safety organization]." *Id.* at 1040; *accord id.* at 1042–43 ("[N]othing in the record leads us to believe that the information in the documents was assembled, developed, or prepared for a purpose other than reporting to [the defendant]'s patient safety organization."). In other words, the documents there were protected as PSWP under the Reporting Prong, as opposed to the Deliberations Prong.[7] Second, the *Daley* court made a point of holding that "nothing about these documents being privileged renders the facts that underlie the patient safety work product also privileged." *Id.* at 1044. *Daley* does not support the defendants' claim of PSWP over the facts that underlie their analyses — it undermines it.

The court also observes that plain language of the Deliberations Prong extends the definition of PSWP only to materials that "identify or constitute the deliberations or analysis." 42 U.S.C. § 299b-21(7)(A)(ii).[8] It does not extend the definition of PSWP to all documents that *contain* deliberation or analysis. In other words, the fact that a portion of a document may contain

---

[6] Defs. PSWP Opp'n – ECF No. 115 at 17–18.

[7] The defendants themselves in their filings stress the importance of distinguishing between the Reporting Prong and the Deliberations Prong, citing *Daley* and other authorities. Defs. PSWP Opp'n – ECF No. 115 at 14–15.

[8] The defendants do not invoke the "identify" portion of 42 U.S.C. § 299b-21(7)(A)(ii).

ORDER – No. 18-cv-06271-PJH (LB)  5

protected deliberations or analysis does not transform the document in its entirety into PSWP. Again, by way of analogy, the Ninth Circuit has held in the context of the governmental deliberative-process privilege that "the deliberative process privilege does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Karnoski*, 926. F.3d at 1204 (quoting *Loving*, 550 F.3d at 38). The defendants do not identify anything in the statutory text of the PSQIA, its implementing regulations, or the case law that suggests that the Deliberations Prong sweeps more broadly. *See generally* Patient Safety and Quality Improvement Act of 2005, 81 Fed. Reg. 32,655, 32,656 n.5 (May 24, 2016) ("'It is not the intent of [the PSQIA] to establish a legal shield for information that is already currently collected or maintained separate from the new patient safety process, such as a patient's medical record. That is, information which is currently available to plaintiffs' attorneys or others will remain available just as it is today.'") (quoting 151 Cong. Rec. S8741 (daily ed. July 22, 2005) (statement of Sen. Enzi)).

### 1.2   ". . . of . . . a Patient Safety Evaluation System"

The plain language of the Deliberations Prong extends the definition of PSWP only to deliberations or analysis "of . . . a patient safety evaluation system." 42 U.S.C. § 299b-21(7)(A)(ii). It does not extend the definition of PSWP to deliberations or analyses outside of a patient-safety-evaluation system.

The defendants submitted documentation[9] of their patient-safety-evaluation system ("PSES Summary"), which provides in relevant part:

---

[9] HHS recommends but does not require providers to document their patient-safety-evaluation systems. 73 Fed. Reg. at 70,738 ("The Department recommended that a provider consider documentation of a patient safety evaluation system to support the identification and protection of patient safety work product. Documentation may provide substantial proof to support claims of privilege and confidentiality and will give notice to, will limit access to, and will create awareness among employees of, the privileged and confidential nature of the information within a patient safety evaluation system which may prevent unintended or impermissible disclosures. We recommended that providers and PSOs consider documenting how information enters the patient safety evaluation system; what processes, activities, physical space(s) and equipment comprise or are used by the patient safety evaluation system; which personnel or categories of personnel need access to patient safety work product to carry out their duties involving operation of, or interaction with, the patient safety evaluation system; the category of patient safety work product to which access is needed and any

## IV. Background, Purpose and Overview of the Retail PSES

. . . .

The Retail PSES exists anywhere CVS Retail collects, analyzes, maintains or reports PSWP, or where CVS or its Affiliated Providers conduct Patient Safety Activities relating to CVS's Retail pharmacy business. The Retail PSES extends to any facility, whether or not specifically identified in this description of the Retail PSES, that is under the control of CVS or an Affiliated Provider, where use of PSWP may result in enhanced patient safety or quality improvement at CVS Retail or an Affiliated Provider of CVS. The Retail PSES includes but is not limited to patient safety and quality improvement activities involving CVS's Retail pharmacy business.

### A. Designation of Patient Safety Work Product

To ensure that all employees of CVS and its Affiliated Providers know what information has been designated as Patient Safety Work Product, so that such information will be maintained securely and not disclosed in violation of the Patient Safety Act rules concerning confidentiality, all documents that are Patient Safety Work Product shall be marked with the following:

**"Privileged & Confidential: Patient Safety Work Product Under Federal Law/ PSES Date _____"**

The "PSES Date" is the month and year the Patient Safety Work Product is created or collected for inclusion in the CVS Retail PSES for reporting to the PSO.

. . . .

## V. Description of CVS Retail PSES

### A. Collection of Information on Patient Safety Events

CVS Retail collects information about Patient Safety Events, including dispensing errors and near miss incidents, through reports submitted by pharmacists to whom the events are reported.

. . . .

### C. Other Reports and Analyses Designated as PSWP

The CVS Retail patient safety team regularly creates reports regarding patient safety matters, including but not limited to memoranda, analyses, audits, RCAs, presentations, agendas and other materials compiled for discussion with the Retail

---

conditions appropriate to such access; and what procedures the patient safety evaluation system uses to report information to a PSO or disseminate information outside of the patient safety evaluation system. . . . *Final Rule:* . . . . Based on the comments, we have not . . . require[d] documentation. . . . We encourage providers to document their patient safety evaluation systems for the benefits mentioned above. We believe documentation is a best practice.").

Patient Safety Committee and/or the Enterprise Patient Safety Council. These reports are securely maintained in electronic format by the CVS Retail patient safety team and are reported to a PSO. Paper copes of such reports are securely stored in locked file drawers maintained by the head of the CVS Retail patient safety team.

From time to time, the CVS Retail patient safety team, the CVS Retail quality assurance team, and analysts performing work at the request of the CVS Retail patient safety, quality assurance, or other pharmacy operations teams, conduct analyses and create memoranda, reports, audits, presentations, and other materials for the purpose of improving patient safety. Such materials are labeled as PSWP, reported to a PSO, and are securely maintained within the Retail PSES in electronic format by the CVS Retail patient safety team. Paper copies of such analyses and reports are securely stored in locked file drawers maintained by the head of the CVS Retail patient safety team.[10]

The defendants seize on the fact that their PSES Summary states that "[t]he Retail PSES exists anywhere . . . where CVS or its Affiliated Providers conduct Patient Safety Activities relating to CVS's Retail pharmacy business" to argue that their documents may be protected as PSWP no matter where they are located.[11] The defendants do not address the other requirements that their PSES Summary imposes with respect to PSWP, including that "all documents that are Patient Safety Work Product shall be marked with the following: **'Privileged & Confidential: Patient Safety Work Product Under Federal Law/PSES Date _____'**"[12] or that PSWP reports "are securely maintained in electronic format by the CVS Retail patient safety team" and that "[p]aper copies of such analyses and reports are securely stored in locked file drawers maintained by the head of the CVS Retail patient safety team."[13] The defendants do not assert that all of the documents they are withholding comply with these requirements, and they do not cogently explain why their internal PSES Summary should control when it comes to expanding

---

[10] Summary of the CVS Retail Pharmacy Patient Safety Evaluation System (July 18, 2016) – ECF No. 115-4 at 65–67 (CVS000783–85) ("PSES Summary").

[11] Defs. PSWP Opp'n – ECF No. 115 at 6.

[12] PSES Summary – ECF No. 115-4 at 66 (emphasis in original).

[13] *Id.* at 67.

ORDER – No. 18-cv-06271-PJH (LB)  8

the breadth of PSWP but not when it comes to defining the requirements that documents must meet to be PSWP.

The court also is skeptical of the defendants' argument that they can define their patient-safety-evaluation system as encompassing anywhere and everywhere where the defendants conduct patient-safety activities. The PSQIA requires a patient-safety-evaluation *system*, and a plain-language reading of the term "system" requires something more limited than the entirety of an organization. Among other things, the PSQIA excludes from the definition of PSWP "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system." 42 U.S.C. § 299b-21(B)(ii). If, as the defendants seem to suggest, an organization can define its patient-safety-evaluation system as extending anywhere that it conducts patient-safety activities, it would render 42 U.S.C. § 299b-21(B)(ii) a nullity. HHS guidance similarly recognizes that a patient-safety-evaluation system is more limited than the entire organization, explaining that "a provider should maintain at least two systems or spaces: [a] PSES for PSWP and a separate place where it maintains records for external obligations." 81 Fed. Reg. at 32,659 & n.42. The defendants' cases agree that a patient-safety-evaluation system does not encompass an entire organization. *See Taylor v. Hy-Vee, Inc.*, No. 15-9718-JTM, 2016 WL 7405669, at \*3 (D. Kan. Dec. 22, 2016) (defining patient-safety-evaluation system as "a system for the collection and management of data *for reporting to a PSO*") (emphasis added); *Rumsey v. Guthrie Med. Grp., P.C.*, No. 4:18-CV-01605, 2019 WL 4687560, at \*4 (M.D. Pa. Sept. 26, 2019) (noting that "[t]he patient safety work product privilege is a quiet corner of the room, not a private island" and holding that organizations can invoke PSWP "[i]f they are cautious to remain within the confines of the patient safety evaluation system"); *see also Johnson v. Cook Cty.*, No. 15 C 741, 2015 WL 5144365, at \*6 (N.D. Ill. Aug. 31, 2015) ("While the PSQIA announces broad evidentiary protections for patient safety work product, its drafters made clear that the statue was not intended to provide a blanket protection for all information and communications generated for quality control purposes.").

The defendants may not be claiming in their regular course of business that their patient-safety-evaluation system extends over their entire organization. Their PSES Summary delineates a

number of additional requirements before documents can be considered to be part of the patient-safety-evaluation system and claim PSWP protection, including that they be clearly marked as PSWP and securely maintained by the retail-pharmacy patient-safety team.[14] It may be simply a litigating position that leads the defendants to assert a more expansive definition of PSWP here. The court does not express an opinion at this juncture whether a patient-safety-evaluation system that complies with the requirements and limits set forth in the PSES Summary would be a proper patient-safety-evaluation system. But to the extent that the defendants reach beyond their own PSES Summary's requirements here, their proposal sweeps too broadly.

\* \* \*

Having provided the above guidance, the court orders the following.

First, the court orders the defendants to immediately produce all surveillance video and still photographs contained within the 71 documents that they have been withholding. Surveillance video and still photographs collected from store cameras that monitor and record the defendants' retail pharmacies in the regular course of business cannot be construed as "deliberations" or "analysis" under any plausible construction of those terms and are not protected PSWP.

Second, for the 71 withheld documents, the court orders the defendants to produce the underlying facts and documents that may have been subject to deliberations or analysis but that — under the scope of PSWP as defined by this order — are not separately privileged. Documents that are in part comprised of deliberations can be redacted. More specifically, the plaintiff describes documents that do not appear to be deliberations or analysis, including "Human Resources and managers' records of disciplinary investigations," "[i]nstructions and information provided to internal personnel who are not involved in patient safety activities," and "[r]ecords of employee discipline."[15] From the plaintiff's descriptions, the documents instead concern (1) facts underlying the defendants' deliberations or analyses and/or (2) actions the defendants carried out after they completed their deliberations or analyses and decided on a course of action (e.g., disciplining or

---

[14] PSES Summary – ECF No. 115-4 at 66–67.

[15] Pl. PSWP Mem. – ECF No. 100 at 5.

firing pharmacists), as opposed to the deliberations or analyses themselves. If so, the documents might fall outside the scope of the Deliberations Prong. *Cf. Karnoski*, 926 F.3d at 1204. Also, from the descriptions, the court is skeptical that the withheld documents are entirely comprised of deliberations or analyses of a patient-safety-evaluation system (and as such are amenable to a redacted production). *Cf. id.* Finally, the court questions whether the documents are deliberations or analyses of a proper patient-safety-evaluation system, as opposed to putative deliberations or analyses that are unrelated to a patient-safety-evaluation system. The court has not seen the documents. The court directs the defendants to produce documents that comply with the court's guidance.

In aid of this production, the defendants must reexamine the withheld documents by December 19, 2019 and then produce immediately all documents that this order requires. If they nonetheless determine that documents meet the court's guidelines and are PSWP, by December 19, 2019, they must give the plaintiff an updated privilege log of all documents (or portions thereof) that they claim are PSWP. The privilege log must add, for each document, all individuals who have access to the document and all places or systems where the document is located or to where it has been distributed.[16] If the parties still dispute the defendants' assertion of PSWP, they must meet and confer in person for no less than one hour to discuss. If the parties are unable to resolve their disputes, the court may consider reviewing a sample of documents *in camera*.

---

[16] The defendants' current privilege log simply states, for each document, that "[a] true and correct copy is stored electronically on counsel for Defendants' secure, cloud-based storage system." Defs. Privilege Log – ECF No. 101 at 163–87. The privilege log does not explain what the "secure, cloud-based storage system" is, what individuals have access to the document, or whether it is located or has been distributed to other locations beyond this cloud-based storage system.

The defendants should also number each row of the privilege log sequentially, to make it easier to refer to documents.

**2. Burden**

The defendants raise burden and proportionality objections to the plaintiff's interrogatories 1–4 and 19, which read:

> 1. IDENTIFY all individuals who have been selected for participation in audits of DEFENDANT'S Drug Utilization Review ("DUR") system since August 23, 2015.
>
> 2. For each individual identified in response to the preceding interrogatory, state the person's race/color.
>
> 3. For each individual identified in response to Interrogatory No. 1, state whether the individual's employment was terminated based on the results of their participation in audits of DEFENDANT'S DUR system.
>
> 4. IDENTIFY all individuals responsible for selecting PLAINTIFF to participate in THE AUDIT.
>
> 19. For each individual identified in response to Interrogatory No. 1, state whether the individual failed to comply with any procedure or expectation of the audit of DEFENDANT'S DUR system in which the individual participated.[17]

In their last joint letter brief, the defendants did not cogently raise burden or proportionality objections with respect to these interrogatories.[18] The court nonetheless extended the defendants an opportunity to submit an additional brief and reply in support of any burden and proportionality objections they might have.[19] Having reviewed the defendants' supplemental briefs, the court overrules their objections.

As a preliminary matter, while the defendants have been objecting to what the parties have been calling "comparator discovery," Interrogatory No. 4 is not comparator discovery — it is

---

[17] Pls. First Set of Interrogs. – ECF No. 105-4 at 34–35; Pls. Second Set of Interrogs. – ECF No. 105-4 at 42.

[18] *See* Joint Letter Br. – ECF No. 119 at 1 (saying in passing that the plaintiff's interrogatories are "unreasonably overbroad" but not providing any further explanation of their overbreadth argument or of undue burden in responding to the interrogatories). The court notes that the parties did not use their full page limit for that letter brief, so the defendants do not have a valid excuse that page limitations prevented them from including their burden argument.

[19] Order – ECF No. 128 at 3.

ORDER – No. 18-cv-06271-PJH (LB)　　　　12

discovery relating specifically to the plaintiff. The defendants do not raise any cognizable objection to that interrogatory, and the court orders them to respond to it.

With respect to the other "comparator discovery" interrogatories, the court first notes that this is a discovery dispute, not a dispositive motion on the merits of the defendants' claims. The plaintiff is not limited to admissible evidence and need not prove his claims at this juncture. "Information . . . need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The defendants' primary argument is that while 50% of the pharmacists who took the DUR audit failed,[20] only pharmacists who failed the DUR audit for the specific reason the plaintiff did are "similarly situated" employees that could be used for comparator purposes and that other pharmacists who failed (or who passed) are per se not similarly situated, and thus the defendants do not have to respond to any discovery requests regarding the latter.[21] Whether employees are similarly situated is a factual question, and the defendants cite no authorities that support their position that they can decide for themselves who is similarly situated and who is not and refuse to respond to discovery on that basis. *Cf. Keller-McIntyre v. Coll. of Health & Human Servs.*, No. C-06-3209 MMC (EMC), 2006 WL 3456672, at *1 (N.D. Cal. Nov. 29, 2006) (denying defendant's motion to limit discovery into other employees unless court first reviewed records in camera to determine whether the employees were similarly situated because "the question of whether an employee is similarly situated is ordinarily a question of fact for the jury. If the court were to adopt the [defendant]'s proposal, then it would be preempting the jury's role as factfinder.") (citations omitted).[22]

---

[20] Pl. Suppl. Burden Opp'n – ECF No. 130 at 5.

[21] Defs. Suppl. Burden Mem. – ECF No. 129 at 4.

[22] The vast majority of the cases the defendants cite are cases deciding summary-judgment motions that do not address the scope of discovery. *Cf. Patel v. Cal. Dep't of Pub. Health*, No. 2:15-cv-02471-KJN, 2018 WL 4006554 (E.D. Cal. Aug. 17, 2018); *Rasheed v. Chao*, No. CV 14-7586 PSG (JPRx), 2017 WL 6520603 (C.D. Cal. July 20, 2017); *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146 (C.D. Cal. 2013); *Moore v. Donahoe*, 460 F. App'x 661 (9th Cir. 2011); *Wills v. Super. Ct.*, 195 Cal. App. 4th 143 (2011); *Wells v. Nestle Waters N. Am., Inc.*, No. CV 04-04120 FMC (SSx), 2005 WL 6168689 (C.D. Cal. Oct. 6, 2005); *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634 (9th Cir. 2004); *see also Rodriguez v. City of Colton*, No. EDCV-07-303-SGL (OPx), 2009 WL 10668930 (C.D. Cal. June 12, 2009) (deciding motion for attorney's fees); *Brown v. Sierra Nevada Mem'l Miners Hosp.*, 849 F.2d 1186 (9th Cir. 1988) (addressing exclusion of evidence at trial for lack of foundation, not lack of

The defendants also object that it would be overly burdensome to respond to the plaintiff's interrogatories.[23] The defendants support their burden argument only with a declaration from their litigating counsel, who does not attest to burden based on personal knowledge and instead couches his responses by saying "I am informed" (what informed him, he does not say).[24] Considering that the plaintiffs issued Interrogatories Nos. 1–4 in March 2019 and Interrogatory No. 19 in June 2019 and the defendants apparently have not done anything to address them until now (including not meaningfully objecting on the ground of burden[25]), the defendants' eleventh-hour claim of burden, supported only by a thin declaration from counsel, is not well taken. *Cf. United States v. Warner*, No. C 11-04181 LB, 2012 WL 6087193, at *6 (N.D. Cal. Dec. 6, 2012) (rejecting as unpersuasive declaration regarding burdensomeness of discovery where declarant said "it will take some unspecified number of hours to [collect discovery], but he provides no real information to back this claim up"). The court overrules the defendants' objections and orders them to respond to the plaintiff's interrogatories.

**IT IS SO ORDERED.**

Dated: December 11, 2019

_____
LAUREL BEELER
United States Magistrate Judge

---

relevance or discoverability). The ones that address discovery do not support the defendants' position. In *Powell v. Anheuser-Busch Inc.*, No. CV 09-00729-JFW (VBKx), 2012 WL 12964689 (C.D. Cal. May 31, 2012), the court rejected the plaintiff's discovery requests as overbroad but agreed that the plaintiff "could establish relevance if his discovery was tailored to uncover information concerning whether other employees (during a reasonable time period), who had similar who had similar physical disabilities were terminated, or were accommodated with other job tasks which accounted for their disabilities." *Id.* at *2. In *Hunt v. City of El Dorado*, No. CIV S-10-1367 JAM CKD, 2012 WL 13049675 (E.D. Cal. Feb. 1, 2012), the court conducted an in camera review of two employees and the incidents in which they were alleged to have engaged to determine if they were similarly situated. *Id.* at *2. The defendants here have not made a similar proffer.

[23] Defs. Suppl. Burden Mem. – ECF No. 129 at 9–10.

[24] Bluver Decl. – ECF No. 129-1 at 2–3.

[25] *See* Joint Letter Br. – ECF No. 119 (not meaningfully raising burden objection).