UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN HYAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>CVS HEALTH CORPORATION, et al.,<br><br>    Defendants. | Case No. 18-cv-06271-PJH<br><br>**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 56 |

Defendants CVS Health Corporation, CVS Pharmacy, Inc., Garfield Beach CVS, LLC, and CVS RX Services, Inc.'s (together, "CVS") motion for summary judgment came on for hearing before this court on November 13, 2019. Plaintiff Ryan Hyams appeared through his counsel, Beth Gunn. Defendants appeared through their counsel, Andrew Haeffele and Daniel Fears. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

Plaintiff Ryan Hyams was employed as a pharmacist by CVS, and this action stems from his termination from employment. The First Amended Complaint alleges eight causes of action, each against all defendants: (1) Disparate Treatment Discrimination on the Basis of Race and/or Color in Violation of the California Fair Employment and Housing Act ("FEHA"); (2) Disparate Impact Discrimination on the Basis

of Race and/or Color in Violation of FEHA;[1] (3) Harassment on the Basis of Race and/or Color in Violation of FEHA; (4) Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Race and/or Color in Violation of FEHA; (5) Failure to Prevent, Investigate, and Remedy Discrimination, Harassment, or Retaliation in Violation of FEHA; (6) Intentional Infliction of Emotional Distress; (7) Negligent Infliction of Emotional Distress; and (8) Wrongful Termination in Violation of Public Policy. Defendants move for summary judgment on all claims. See First Amended Compl., Dkt. 22 ("FAC").

Plaintiff was hired by CVS on December 15, 2015, after CVS acquired a pharmacy located in a San Francisco Target store where plaintiff had worked since June 2011. Id. ¶ 18; Declaration of Ryan Hyams, Dkt. 65 ("Hyams Decl.") ¶ 3. The parties agree that he had a generally positive employment record prior to the incident at issue. E.g., Hyams Decl. ¶¶ 3–4. On or about May 19, 2017, plaintiff was selected by CVS for an audit of a Drug Utilization Review ("DUR") system, although by the nature of the audit plaintiff was not informed that it was occurring. FAC ¶ 26; Hyams Decl. ¶ 9. The audit essentially consisted of CVS creating a digital record of a fictitious patient (the "test patient," Jessica Launer) with various ailments and drug prescriptions, designed to test pharmacists' detection of possible drug interactions. FAC ¶¶ 27–29. When undergoing the audit, plaintiff bypassed a warning screen, made notations in the test patient's file, and then approved the prescription. Id. ¶ 29; Hyams Decl. ¶ 10. He planned on discussing the drug interactions with the test patient, and he claims that he marked the physical bag containing the prescription for an in-person oral consultation regarding drug interactions. FAC ¶ 31; Hyams Decl. ¶¶ 10–11. But when bypassing the screen to approve the prescription, plaintiff indicated that he had called the prescriber of the medication—which he had not actually done. E.g., Hyams Decl. ¶¶ 7–10. Plaintiff understood CVS's policy as permitting him to approve the prescription as long as he discussed it with the patient,

---

[1] The second cause of action has been dismissed with prejudice. Dkt. 71.

although the computer system did not allow him to indicate that was his intention. Id. ¶¶ 6–10. As such, he thought the computer had a "glitch," and he falsely indicated that he had contacted the prescriber.

There is a factual dispute with respect to what happened when the test patient came to collect the prescription. Plaintiff has submitted a declaration attesting that the test patient was first asked by the pharmacist technician whether she had insurance, at which point she left and never returned. Id. ¶ 11. In plaintiff's telling, the test patient spoke only with a pharmacist technician, never the pharmacist. So, she was never given the prescription, never advised about the medication interactions, and plaintiff never spoke with her. Id. However, the test patient submitted a declaration saying that she discussed the drug interactions with "the pharmacist," although she did not specify who that pharmacist was—i.e., whether it was plaintiff. Declaration of Jessica Launer, Dkt. 51 ¶ 9. She said that she asked if there would be dangerous interactions, but the pharmacist only said the drug might make her tired. Id. Because the test patient attests that she spoke with a pharmacist and not the pharmacist technician, the parties' proffered evidence cannot be read consistently, and at this stage of litigation the court must credit plaintiff's evidence.

In July 2017, CVS contacted plaintiff regarding the DUR audit. FAC ¶ 37; Hyams Decl. ¶ 13. Interactions between plaintiff and CVS's human resources department ensued. FAC ¶¶ 37–45; Hyams Decl. ¶¶ 13–19.

On July 26, 2017, plaintiff's supervisor Harmony Aker asked him to attend a meeting with her and Rowenanne Labuguen Turner, a Human Resources employee, about the events of the audit. Hyams Decl. ¶ 13. Aker and Turner asked plaintiff to explain why he had indicated that he contacted the prescriber when he had not done so. Plaintiff did not recall, but he guessed that he had prior contact with the prescriber and obtained approval to dispense the prescription. He attests that he "also questioned why I, the only African American pharmacist in my District at CVS, appeared to be singled out for this investigation." Id.

3

On July 26 and 27, 2017, without knowing the specific prescription at issue, plaintiff submitted two written statements regarding what he recalled about the incident. Id. ¶ 14 & Exs. B–C. On July 28, 2017, plaintiff submitted another written statement after being informed about the specific prescription name at issue. Id. ¶ 15 & Ex. D.

On August 23, 2017, plaintiff was terminated in an in-person meeting. Id. ¶ 17. He was told that a committee made the decision to terminate him. Id. Plaintiff's supervisor Aker also testified that a committee made the decision to terminate plaintiff. See Aker Dep. 68:4–23, Declaration of Catherine Coble, Dkt. 64, Ex. A ("Aker Dep.") ("I said, 'Do you think this is going to lead to termination?' She said, . . . . I don't know for sure because it's going to go to a committee. There was a committee or something that was making that decision ultimately."), 101:7–25 ("She told me that the committee had made their decision and the decision was to terminate Ryan immediately.").

Defendants argue that a man named Thomas Davis alone made the decision to fire plaintiff, and they have submitted a declaration from Davis stating that he decided to terminate individuals who misrepresented that they spoke to prescribers in the computer system. Declaration of Thomas Davis, Dkt. 50 ¶ 14. But Davis's declaration is potentially inconsistent with defendants' arguments in describing how his policy was implemented. For example, Davis at one point stated that the "decision to terminate was based strictly upon **my conclusion** that these four pharmacists . . . **had misrepresented** that they had contacted the prescriber;" yet he also stated that the zero-tolerance policy of termination applied "to all pharmacists who **we concluded had entered false information** into the system during a DUR Audit[.]" Id. (emphasis added).[2]

Even ignoring plaintiff's and Aker's sworn testimony indicating that a committee was involved in the decision, Davis's declaration leaves open a reasonable dispute as to the material fact of who was responsible for plaintiff's termination. Davis declares that he

---

[2] Defendants' briefing attempts to elide the nuance of Davis's declaration, and it instead simply refers to him as "the sole decision-maker regarding plaintiff's separation[.]" Mot. at 12; see Reply at 10.

4

1 was solely responsibility for the company policy, but he suggests that others were
2 involved in executing it. As a result, the specific facts are unclear but it appears plausible
3 that Davis alone decided on the overall policy of terminating those who entered false
4 information into the computer system, and some larger group (which Davis refers to as
5 "we") determined whether a pharmacist had entered false information into the computer
6 system (or otherwise violated company policy). This plausible characterization of Davis's
7 declaration is consistent with plaintiff's evidence that a committee ultimately decided to
8 terminate his employment. Given the dispute in the factual record, the evidence
9 supporting plaintiff's characterization of the disputed factual issue must be credited for
10 purposes of this motion.

On August 29, 2019, defendants filed the present motion for summary judgment. Dkt. 56. On September 23, 2019, defendants deposed Hyams. See Dkt. 104 at 4. On September 27, 2019, plaintiff deposed Davis. See Dkt. 104 at 1. Over a month after those depositions, on November 6, 2019, defendants filed an administrative motion to supplement the factual record on their summary judgment motion, seeking to include the deposition transcripts of Davis and Hyams as part of the record. Dkt. 104. Plaintiff timely opposed, five days before the hearing on defendants' motion to dismiss. Dkt. 112.

**DISCUSSION**

**A. Legal Standard**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).

Courts recognize two ways for a moving defendant to show the absence of genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim and (2) identify the absence of evidence necessary for plaintiff to substantiate such claim. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").

"Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists. When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam) (citations omitted).

The court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. See Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

**B.   Analysis**

Defendants move for summary judgment with respect to each cause of action asserted by plaintiff. The court addresses each in turn.

**1.   First Cause of Action: Disparate Treatment**

The parties agree that plaintiff's disparate treatment claim is subject to the three-step burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). First, plaintiff must establish the four prima facie elements of his claim: "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 355 (2000).

Second, if "the plaintiff establishes a prima facie case, a presumption of discrimination arises" and "the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact . . . that its action was taken for a legitimate, nondiscriminatory reason." Id. at 355–56 (internal quotation marks omitted).

Third, once defendants provide such reasons the burden shifts back to plaintiff to prove intentional discrimination, showing that defendants' reasons were pretextual. Loggins v. Kaiser Permanente Int'l, 151 Cal. App. 4th 1102, 1112 (2007). "A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112–13 (9th Cir. 2011). "Proof that the defendant's explanation is unworthy of credence is [a] form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1123 (9th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147 (2000)); see also Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003) ("A reasonable fact finder could also find that a pretextual explanation such as this one casts doubt on other explanations that, standing alone, might appear to be true."). The Ninth Circuit has "held that very little evidence is necessary to raise a genuine issue of

fact regarding an employer's motive; any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." McGinest, 360 F.3d at 1124 (internal quotation marks omitted); accord Earl, 658 F.3d at 1113 ("a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one'").

Although defendants have articulated legitimate, non-discriminatory reasons for their alleged actions, plaintiff has identified disputed issues of material fact necessary to determine whether those reasons were pretextual.[3]

Defendants argue that Davis's declaration that he did not know plaintiff's race before deciding to fire him conclusively resolved this issue. But that statement's relevance hinges on disputed factual questions regarding whether Davis or a committee made the decisions necessary to fire plaintiff. E.g., Aker Dep. 68:4–23, 101:7–25, 137:5–18; Turner Dep. 229:1–9, Declaration of Catherine Coble, Dkt. 64, Ex. C. Even if Davis was the sole decisionmaker, triable issues exist with respect to whether Davis in fact knew plaintiff's race, which could hinge on a determination as to whether Davis's testimony is credible. Plaintiff has identified evidence sufficient to put Davis's credibility on this specific point at issue. See e.g., Aker Dep. 108:23–111:10 (surveillance video of Hyams during incident at issue, showing his race, was part of the record CVS compiled prior to terminating him). Because Davis's testimony about the circumstances of plaintiff's termination could be central to the resolution of the merits of this claim, plaintiff has identified circumstantial evidence that, at this stage, creates a genuine dispute about the motive behind plaintiff's termination.

As such, defendants' motion for summary judgment is DENIED with respect to plaintiff's first cause of action.

**2.    Second Cause of Action:  Disparate Impact**

After defendants filed their motion for summary judgment, the court dismissed plaintiff's disparate impact claim with prejudice. As such, defendants' motion for

---

[3] The same disputed facts also relate to plaintiff's prima facie burden of presenting "some other circumstance that suggests a racially discriminatory motive."

8

summary judgment with respect to the second cause of action is moot.

### 3. Third Cause of Action: Harassment

Plaintiff's harassment claim requires that he establish, inter alia, that he was subjected to harassment that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. See, e.g., Thompson v. City of Monrovia, 186 Cal. App. 4th 860, 877 (2010) (claim requires conduct that "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee"); Jones v. Dep't of Corr. & Rehab., 152 Cal. App. 4th 1367, 1377 (2007) ("The requirement that the conduct be sufficiently severe or pervasive to create a working environment a reasonable person would find hostile or abusive is a crucial limitation that prevents . . . harassment law from being expanded into a 'general civility code.'"). "This must be assessed from the 'perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff.'" Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 264 (2009).

The law asks whether "a reasonable person subjected to the discriminatory conduct would find . . . that the harassment so altered working conditions as to make it more difficult to do the job." Cal. Gov't Code § 12923(a). "A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." Cal. Gov't Code § 12923(b). That applies to "stray remarks" even when not uttered by a decisionmaker. Cal. Gov't Code § 12923(c).

Plaintiff's claim is based solely on two allegations. First, plaintiff presents evidence that he was referred to by customers and "non-pharmacy employees" as "the Big Black Pharmacist."[4] Hyams Decl. ¶ 5; Aker Dep. 152:13–153:18. The corroborating

---

[4] According to every indication, including plaintiff's counsel's statements at the hearing, "non-pharmacy employees" refers to employees of non-party Target, the store within which the CVS pharmacy is located.

9

evidence plaintiff points to, from Aker's deposition, very clearly presents these comments in an innocent light that does not suggest any interference with plaintiff's working conditions. See Aker Dep. 152:13–153:18 ("Maybe Target employees [who did not know his name would refer to Hyams as], the 'big, tall, black pharmacist.' They don't know his name, so that's who they're referencing when they're discussing something with me. But that would be the only time. People that don't know who he is, like didn't know his name. 'Oh, the big, tall, black guy, he's really nice.'"). Second, plaintiff alleges that a supervisor once told him that he "came across too aggressively because of my skin color and size" when he "stood with [his] arms crossed[.]" Hyams Decl. ¶ 5.

Plaintiff declares that the alleged statements were unwelcome and made him "feel less-than because of [his] race and color, undermining [his] personal sense of well-being." Id. It is difficult to understand how the statements attributed to customers and Target employees could even be considered harassing given that (1) they were, according to plaintiff's witness, descriptive in nature, and (2) there is no evidence proffered by plaintiff that they were said to him rather than about him. In other words, he does not even suggest that he ever heard the comments directly. More importantly, however, plaintiff does not declare or otherwise present any evidence that the statements "altered working conditions as to make it more difficult to do the job." Cal. Gov't Code § 12923(a). As such, there is no dispute of material fact with respect to whether the statements satisfy the requirement that they made it more difficult for plaintiff to do his job. Accordingly, the court GRANTS defendants' motion for summary judgment with respect to plaintiff's third cause of action for harassment.

### 4. Fourth Cause of Action: Retaliation

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the

10

adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

Defendants argue that plaintiff cannot establish a causal link establishing retaliatory motive because CVS has no record of plaintiff submitting a complaint (formal or informal) during his employment. Even if plaintiff did submit a complaint, defendants argue that Davis alone made the firing decision, so no causal link could possibly exist because he was unaware of any protected activity. Plaintiff argues that he was fired because he complained that CVS singled him out for the audit, and the temporal proximity between the events is evidence of causation.

First, plaintiff provides evidentiary support for the contention that, at a meeting with his boss, he "questioned why I, the only African American pharmacist in my District at CVS, appeared to be singled out for this investigation." Hyams Decl. ¶ 13. This establishes a dispute of material fact with respect to whether plaintiff engaged in a protected activity. Second, regarding a causal link, evidence that plaintiff's termination followed roughly one month after his alleged complaint is sufficient to create a disputed material fact regarding intentional retaliation. See, e.g., Flait v. N. Am. Watch Corp., 3 Cal. App. 4th 467, 478 (1992) (There was "sufficient circumstantial evidence from which a trier of fact could conclude that there is a causal link" where plaintiff "was terminated only a few months after" the protected activity. "This evidence is sufficient to withstand summary judgment on the issue of [employer's] retaliatory motives."); Santillan v. USA Waste of California, Inc., 853 F.3d 1035, 1047 (9th Cir. 2017) (plaintiff "established a nexus between his termination in July 2012, and his protected activity because USA Waste fired him roughly two months after" the activity); Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two."). Third, defendants' argument that Davis was the sole

11

decisionmaker does not support summary judgment for the reasons discussed above.

As such, defendants' motion for summary judgment is DENIED with respect to plaintiff's fourth cause of action.

### 5. Remaining Causes of Action

Plaintiff's fifth, sixth, seventh, and eighth causes of action are derivative of the disparate treatment or retaliation claims, for which defendants have failed to meet their burden to obtain summary judgment. As such, defendants' motion for summary judgment is DENIED with respect to those causes of action.

### 6. Admissibility Challenges and Administrative Motion

Plaintiff's requests to strike various evidentiary submissions, and his numerous evidentiary objections, are DENIED AS MOOT. The only holding in this order adverse to plaintiff—with respect to the third cause of action—hinges on plaintiff's failure to proffer evidence sufficient to prevail on his claim, not the court's consideration of any evidentiary submission by defendants. Defendants' improper and untimely motion to supplement the evidentiary record on their own motion for summary judgment—filed 69 days after their motion for summary judgment was filed and one week before the hearing on that motion—is DENIED for the reasons stated at the hearing.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED with respect to plaintiff's first, second (previously dismissed), fourth, fifth, sixth, seventh, and eighth causes of action. Defendants' motion for summary judgment is GRANTED with respect to plaintiff's third cause of action.

**IT IS SO ORDERED.**

Dated: December 12, 2019

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge